OFFICES OF

**PAVONE &**  **FONNER, LLP**

<u>A LAW PARTNERSHIP</u>

**BENJAMIN PAVONE, ESQ.
STATE BAR NUMBER 181826**
600 WEST BROADWAY, SUITE 700
SAN DIEGO, CALIFORNIA  92101
TELEPHONE: 619 224 8885
FACSIMILE: 619 224 8886
EMAIL: bpavone@cox.net

<u>ATTORNEYS FOR THE PLAINTIFF</u>

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **BENJAMIN L. PAVONE**<br><br>　　　　**PLAINTIFF,**<br>v.<br><br>**STATE BAR OF CALIFORNIA, OFFICE OF CHIEF TRIAL COUNSEL ENFORCEMENT;**<br><br>　　　　**DEFENDANT.** | **CASE NO.:**<br><br>**COMPLAINT FOR:**<br><br>I.　**VIOLATION OF FIRST AMENDMENT, DUE PROCESS AND OTHER FEDERAL CONSTITUTIONAL RIGHTS**<br><br>II.　**FACIAL AND AS-APPLIED CONSTITUTIONAL CHALLENGE TO BUS. & PROF. CODE 6068(B)**<br><br>　　**(42 U.S.C. § 1983)** |

# INTRODUCTION

1. This case is filed to halt a threatened state bar court lawsuit, as the charges violate Plaintiff's First Amendment, due process, and other constitutional advocacy rights.

# PARTIES

2. Plaintiff Benjamin Pavone (Pavone, Plaintiff, undersigned counsel, counsel, or narrated in the first person) is a 25th year attorney, licensed to practice law in the State of California in good standing and in all California federal courts, with no record of discipline or any other failure of compliance.

3. Defendant State Bar of California, Office of Chief Trial Counsel Enforcement ("State Bar") is the prosecuting arm of the State Bar of California. It brings actions for alleged violations of the ethics and related rules of professional conduct.

# BASIS FOR FEDERAL JURISDICTION

4. Title 42 United States Code section 1983 provides that every person who, under color of law, causes another to be deprived of any of their constitution rights or protections under federal law, shall be liable to the plaintiff in an action for damages, for injunctive relief, or for any appropriate relief may file suit in federal district court.

5. As defendant is located in this district and substantial activity by one party has occurred here, so this is a proper venue pursuant to 28 U.S.C. § 1391(b).

# STATEMENT OF FACTS

6. On July 24, 2020, the State Bar presented Plaintiff with a draft version of a Notice of Disciplinary Charge ("NDC"), the initiating document for a formal State Bar prosecution. A true and correct copy of the State Bar's proposed charging document is included here as Exhibit A.

7. On August 10, 2020, negotiations failed in terms of a potential resolution of the draft NDC, such that the State Bar confirmed its intention to file its NDC to formally initiate proceedings.

8. The NDC violates Plaintiffs' First Amendment and Fourteenth Amendment rights to due process in that it infringes on permissible advocacy of a practicing attorney.

9. In particular, in Count 1, the NDC attributes statements made in legal proceedings that criticize a ruling as a personal criticism of the ruling's author, a state court commissioner.

10. The State Bar argues that the ruling reflects a personal gender attack on the commissioner, although the language employed says nothing at all about her personally. Rather, plaintiff used a colorful (or caustic, depending on one's viewpoint) metaphor to criticize a court ruling.

11. It is the State Bar's unwillingness to read the language carefully and as actually stated (or improper decision to convert the language into something it does not expressly state) to reach a conclusion that the comment is a personal attack on the author's character.

12. The State Bar further alleges that Plaintiff "manifested gender bias" by virtue of the language utilized, although rules prohibiting the manifestation of gender bias were not passed until after the statement was published; by definition, the State Bar cannot charge an attorney with an offense on an *ex post facto* basis. This is a violation of Plaintiff's federal due process rights.

13. In Count 2, the State Bar alleges that Plaintiff improperly criticized the trial judge as attempting to thwart appellate review because she did not serve a signed judgment. There is no factual dispute that a judgment was presented to her, that she signed it, and then did not serve it on the parties.

14. Plaintiff drew the inference that she did not serve the judgment because this was a way to secretly expire Plaintiff's client's appellate rights, without Plaintiff knowing the clock had started. The State Bar infers that this was a false and unreasonable attack on her character by Plaintiff.

15. Lawyers cannot be ethically sanctioned because they choose one inference over another to describe an action of a third party including the action of a judge; lawyers are as a matter of First Amendment advocacy and freedom of thought and speech, entitled to choose any of the reasonable inferences from the evidence of a decision, as they believe most conforms to the truth.

16. The entire idea of this being a "false" statement, a "false" opinion or any other sort of fraudulent act stretches, and breaks, reasonable boundaries for the entire concept of falsity. Plaintiff did not state as a fact that she did anything.

17. Plaintiff stated that she signed but did not serve the judgment, which is factually undisputed, and that such a decision appeared to him to be an attempt to thwart appellate review. There can be no legal debate that by not notifying Plaintiff that a judgment had been signed, an appellate clock started without notice to Plaintiff. The State Bar admits that this interpretation is merely Plaintiff's "suggestion." There can be no doubt it was Plaintiff's inference based on these circumstances. There can also be no doubt that this is one of several permissible inferences a party might draw. There is nothing ethically violative here. This Count represents the State Bar's attempt to muzzle constitutionally-protected freedom of thought and speech under the guise of characterizing such commentary as "disrespectful," perhaps the singularly most vague word in the English language.

18. In Counts 3 and 4, the State Bar further alleges that Plaintiff recited various statements and made various arguments in two appellate briefs in the same case that also constitute "disrespect" of the same trial commissioner.

19. The statements in the two briefs variously allege that the commissioner deviated from the law so perfectly, so clearly, so uniformly and so consistently throughout her opinion, that the ruling was not in fact a detached legal analysis by an independent jurist but represented an intentional form of retaliation, for plaintiff's act of litigating the incompetence of an earlier judge.

20. There is no serious debate that the earlier judge's handling of the case reflected profound judicial incompetence. His biased clerk was advising one side to file certain motions; he was not personally reading the briefs; he was known to abdicate his judicial duties to research clerks and did again in this case; he sanctioned the wrong party on an entirely inaccurate and misguided understanding of the procedural facts; and when challenged at oral argument to defend his vacuous tentative ruling, he issued a series of statements in court that were, respectfully, indefensible nonsense. Not long after Plaintiff filed a writ to an appellate court raising all of these issues, this judge retired.

21. In discussing these issues in the appellate briefs, Plaintiff detailed this body of evidence, along with various of the commissioner's comments and positions about this earlier flap, noted her *sua sponte* decision to supposedly review the "entire case file" merely to decide a motion, along with the serious problems with the accuracy of the ruling, all to argue that the commissioner was essentially poisoned against him – biased and determined to rule against Plaintiff no matter the issue, no matter the law, and no matter the facts.

22. Plaintiff argued that she abandoned her duty to assiduously respect the law in order to uniformly rule against Plaintiff and his client, as payback for Plaintiff's criticism of the earlier judge. These arguments by Plaintiff were drawn from the evidence on the subject within the case file. They represented counsel's inferences and deductions from the totality of the circumstances. They were founded in an advocate's legitimate rights to assert and allege judicial bias, so as to create and sow doubt in the minds of the state appellate court about the credibility and accuracy of the trial court ruling and her motivation for issuing its particular sub-decisions.

23. The arguments are phrased in professional language; the Bar does not contend otherwise. Accordingly, these arguments constituted constitutionally-protected First and Fourteenth Amendment legal advocacy in support of a legitimate contention related to judicial bias. If they are perceived to be "disrespectful" by the State Bar, they were legally "disrespectful" within the meaning of the First Amendment to the United

States Constitution. They therefore may not form the basis for an ethics charge in State Bar Court.

# I.
# FIRST CLAIM FOR RELIEF

## VIOLATION OF 42 U.S.C. § 1983

### UNITED STATES CONSTITUTION - FIRST AMENDMENT

### INFRINGEMENT ON RIGHT TO FREE SPEECH, FREEDOM OF THOUGHT, FREEDOM OF OPINION, FREEDOM TO DRAW INFERENCES AND DEDUCTION, AND RIGHT TO ENGAGE IN PERMISSIBLE LEGAL ADVOCACY

### (REQUEST FOR DECLARATORY AND INJUNCTIVE RELIEF)

24. Plaintiff incorporate paragraphs 1-23, as if fully set forth into this cause of action.

25. Plaintiff possesses First, Fourteenth and other constitutional rights to perform legal advocacy.

26. The State Bar is threatening to infringe on these rights by virtue of its proposed NDC, which essentially criminalizes permissible advocacy dedicated to establishing judicial bias, itself a broadly permissible subject within the law.

27. For example, under California law, an attorney or his client may file a statement under Code of Civil Procedure section 170.6 that announces either's belief that the assigned judge is biased against him.

28. The perceived bias may be alleged and be detailed in a description; it may permissibly include either's belief that the allegedly biased judge will issue biased rulings. It does not need to be based on facts that are proven to be true; it does not require a litigant to pick the correct inference; it may be based on suspicion, insinuation, or even litigant delusion. As long as the party sincerely believes it is true, however, it is sufficient to trigger the proper exercise of his rights and result in the assignment of a different judge.

PAVONE v. STATE BAR
COMPLAINT FOR INJUNCTIVE RELIEF

29.   Under the standard being employed against Plaintiff in the Bar's NDC, innumerable 170.6 declarations of bias could be construed as "false" or containing a "false opinion." The allegations asserting bias could be interpreted as "disrespectful" false accusations.

30.   Yet, there is no ethical controversy typically associated with 170.6 filings, because the law broadly permits litigants to argue, assert and contend that judges are biased, even if a third party agrees, disagrees or a conclusion of bias is factually unknowable.

31.   Motions alleging bias are recognized and permissible under California law when circumstances warrant their filing. Indeed, Plaintiff filed a 170.6 motion in the very case at issue, upon receiving evidence that a biased clerk was advising one side to file particular kinds of motions, including a motion for sanctions against the other side's attorney. At the trial level and appellate level, Plaintiff lost this motion. Under the Bar's standard in the NDC, Plaintiff's assertions must be "false" and he should be referred for further ethical prosecution,

32.   Bias motions are decided how all motions are decided: by reviewing the evidence, the law, and rendering a decision. They do not subject the party raising the claim of bias to ethics charges under the theory that such contentions are "disrespectful" pursuant to B&P 6068(b). It is inherently "disrespectful" on some level to suggest a judge is biased – and yet, allegations of bias, in 170 motions, in 170.6 declarations and in other situations as circumstances warrant, are not ordinarily screened for violation of 6068(b) as "disrespectful."

33.   The very idea of alleging that arguments related to judicial bias are themselves violative of 6068(b) is some evidence that the umbrella concept of section 6068(b) "disrespectful" definition has become unworkable, as California courts have applied wildly different – and irreconcilable – standards.

34.   For example, there is case law suggesting that a lawyer who accused a judge of issuing an "illegal" ruling violated section 6068(b). Yet, across this country

every single day, thousands of appellate lawyers contend that lower court rulings were in contravention of the law – aka "illegal" – without drawing ethical controversy.

35. In some circumstances, California law has admonished lawyers for making "false statements" to a court. It would not be controversial for an attorney to be punished for representing to a court that his client was unavailable if in fact he was; this would be a false statement of fact. But the State Bar and some California cases are now trying to stretch this concept of "falsity" to include the inferences a lawyer might draw about a undisputed factual situation, as is the case here.

36. In the above example, a lawyer might report accurately, and it would be undisputed, that his client's "phone is disconnected." That is a fact. If a lawyer then argued to a judge that the lawyer believes his client is "unavailable," this might turn out to be true or false. The other side might argue the other inference, that just because his phone is disconnected, this does not make the client unavailable as he can (or was) reachable by email or messenger or by word of mouth.

37. Based on this undisputed fact, there is no clearly no basis to charge the lawyer with false reporting or some other charge associated with falsity.

38. Clearly, the foundational facts that the client's phone is disconnected are true. The inference drawn by one lawyer is reasonable; it is his inference, his opinion, or his deduction. The inference drawn by opposing counsel is also reasonable; it is his contrary inference, opinion, or deduction.

39. There is no falsity in this on either side, yet this unwarranted intellectual extension – turning arguably or possibly incorrect inferences into false statements – is exactly what the State Bar is trying to do in this case, in dozens of instances.
All of this improper, and all of it in is violation of Plaintiff's right to freedom of speech, freedom of thought, freedom to draw inferences and make deductions based on evidence, as well as due process since the Bar is accumulating mass numbers of these instances into just two counts.

40. This "stacking" is an additional violation of the Fourteenth Amendment right to due process. Plaintiff has a right to know the exact basis of each charge. The two appellate briefs (AOB and Reply), constituting the factual corpus for Counts 3 and 4, contain dozens of statements. Plaintiff could be exonerated at trial of say, 19/20 statements, and yet the Bar would still successfully convict him on that count. This is not reasonable. This is not fair notice.

41. If the State Bar wants to draw from the entire pool of statements in briefs that are 44 pages long and 35 pages long, respectively. then it should segregate and charge Respondent with individual counts, so that Plaintiff can knock out counts that are not based on viable charges and deal with each allegation individually.

42. The Bar should be required to charge Plaintiff with 26 counts or 37 counts or whatever hyperbolic number of charges it believes represents good politics, rather than being able to confuse Plaintiff with reliance on any one of dozens of statements contained with an entire appellate brief, like dropping a beehive on Plaintiff and not telling him which bees it intends to sting him with. For this reason, the Bar's NDC also violates Plaintiff's Fourteenth Amendment rights to fair notice.

## II.

## SECOND CLAIM FOR RELIEF

### VIOLATION OF 42 U.S.C. § 1983

### UNITED STATES CONSTITUTION - FIRST AMENDMENT

### FACIAL AND AS-APPLIED CONSTITUTIONAL CHALLENGE TO BUSINESS & PROFESSIONS CODE SECTION 6068(b) "DUE RESPECT" CLAUSE

### (REQUEST FOR DECLARATORY AND INJUNCTIVE RELIEF)

43. Plaintiff incorporates paragraphs 1-43 as if fully set forth into this action.

44. The term "due respect" as used in B&P section 6068(b) has been applied in the California case law in markedly irreconcilable and unworkable scenarios. The

factual applications of judicial disrespect are as a practical matter limitless, subjective, varying, internally contradictory, vague, overbroad, and logistically untenable.

45. For this reason, section 6068(b) is unconstitutional, consistent with arguments, positions and theories detailed in *Canatella v. California*, 304 F.3d 843 (9th Cir. 1992).

46. If not facially unconstitutional, the statute is unconstitutional as applied in this action. The State Bar's NDC sets a precedent that it can and will interpret words utilized by a lawyer to mean something other than what they actually state.

47. The implications of this are incomprehensible. They permit the Bar to arrogate to itself the right to charge attorneys with ethical violations in virtually any circumstance – in any situation where it can "interpret" an attorney's statement, even if that interpretation is not supported by the language of that statement.

48. This gives the State Bar an almost limitless ability to inflict ethical punishment on attorneys, without attorneys having any ability to know or predict what statements are controversial, since the language of the statement is not actually the basis for the charge – the Bar's unknowable interpretation of it is.

49. Similarly, in dozens of instances, the State Bar proposes to criminalize permissible legal advocacy relating to the development of legal arguments about judicial bias, such that the Bar is systematically infringing on the First Amendment and the many associated freedoms associated with those constitutional rights, with Plaintiff again relying on *Canatella v. California*, 304 F.3d 843 (9th Cir. 1992) as authority for these types of arguments.

## **Younger Abstention Doctrine**

50. As there is no pending proceeding in State Bar parlance until the Bar's NDC is filed, and it has not been filed as of this writing, the *Younger* abstention doctrine does not apply.

# PRAYER FOR RELIEF

*Wherefore*, Plaintiff seeks the following relief:

(i) a declaration that the State Bar's NDC infringes on Plaintiff's constitutional rights;

(ii) an injunction prohibiting the State Bar from charging Plaintiff with an NDC that violates his constitutional rights and specifically the Exhibit A NDC at issue;

(iii) a declaration that the term "due respect" is unconstitutionally vague and unenforceable, as California law does not apply it in a consistent, uniform and enforceable manner that gives the public and California attorneys a definite idea of what is permissible and what is prohibited;

(iv) a declaration that the NDC at issue results in the term "due respect" being unconstitutionally vague and unenforceable, as the NDC proposes to criminalize permissible constitutional argument under the guise of a violation of California state statutory law;

(v) costs of suit;

(vi) attorney's fees pursuant to 42 U.S.C. § 1988 or other rule or statute providing for same;

(vii) such other relief as the Court deems just and proper.

Date: August 11, 2020                                          PAVONE & FONNER, LLP

                                                               Benjamin Pavone, Esq.
                                                               Attorneys for Plaintiff

---

PAVONE v. STATE BAR
COMPLAINT FOR INJUNCTIVE RELIEF

# EXHIBIT A

| | | |
|---|---|---|
| 1 | STATE BAR OF CALIFORNIA<br>OFFICE OF CHIEF TRIAL COUNSEL | **DRAFT** |
| 2 | MELANIE J. LAWRENCE, No. 230102<br>INTERIM CHIEF TRIAL COUNSEL | |
| 3 | MIA R. ELLIS, No. 228235<br>ASSISTANT CHIEF TRIAL COUNSEL | |
| 4 | DREW D. MASSEY, No. 244350<br>SUPERVISING ATTORNEY | |
| 5 | KRISTIN L. RITSEMA, No. 149966<br>SENIOR TRIAL COUNSEL | |
| 6 | 845 South Figueroa Street<br>Los Angeles, California 90017-2515 | |
| 7 | Telephone: (213) 765- | |

STATE BAR COURT

HEARING DEPARTMENT - LOS ANGELES

| | |
|---|---|
| In the Matter of: | Case No. |
| BENJAMIN LAURENCE PAVONE,<br>State Bar No. 181826, | NOTICE OF DISCIPLINARY CHARGES |
| | (OCTC Case No. 19-O-12069) |
| An Attorney of the State Bar. | |

**NOTICE - FAILURE TO RESPOND!**

**IF YOU FAIL TO FILE A WRITTEN ANSWER TO THIS NOTICE WITHIN 20 DAYS AFTER SERVICE, OR IF YOU FAIL TO APPEAR AT THE STATE BAR COURT TRIAL:**

**(1) YOUR DEFAULT WILL BE ENTERED;**
**(2) YOUR STATUS WILL BE CHANGED TO INACTIVE AND YOU WILL NOT BE PERMITTED TO PRACTICE LAW;**
**(3) YOU WILL NOT BE PERMITTED TO PARTICIPATE FURTHER IN THESE PROCEEDINGS UNLESS YOU MAKE A TIMELY MOTION AND THE DEFAULT IS SET ASIDE, AND;**
**(4) YOU SHALL BE SUBJECT TO ADDITIONAL DISCIPLINE. SPECIFICALLY, IF YOU FAIL TO TIMELY MOVE TO SET ASIDE OR VACATE YOUR DEFAULT, THIS COURT WILL ENTER AN ORDER RECOMMENDING YOUR DISBARMENT WITHOUT FURTHER HEARING OR PROCEEDING. SEE RULE 5.80 ET SEQ., RULES OF PROCEDURE OF THE STATE BAR OF CALIFORNIA.**

The State Bar of California alleges:

## JURISDICTION

1. Benjamin Laurence Pavone ("respondent") was admitted to the practice of law in the State of California on March 8, 1996. Respondent was a licensed attorney at all times pertinent to these charges, and is currently a licensed attorney of the State Bar of California.

## COUNT ONE

OCTC Case No. 19-O-12069
Business and Professions Code, section 6068(b)
[Failure to Maintain Respect Due to Courts and Judicial Officers]

2. On or about April 14, 2017, respondent filed a Notice of Appeal in the case entitled *Martinez v. O'Hara, et al.,* Orange County Superior Court case number 30-2012-614932, in which respondent failed to maintain the respect due to the courts of justice and judicial officers by making the following statement regarding the ruling of Commissioner Carmen Luege, a female judicial officer, which statement manifested gender bias, in willful violation of Business and Professions Code section 6068(b):

   a. "Pursuant to Code of Civil Procedure section 904.1 *et seq*., Plaintiff Fernando Martinez hereby appeals from the lower court's disgraceful order dated November 30, 2016, as incorporated into a reported judgment dated February 21, 2017, and as such, technically appeals from that judgment. The ruling's succubustic adoption of the defense position, and resulting validation of the defendant's spseudohermaphroditic misconduct, prompt one to entertain reverse peristalsis unto its four corners."

## COUNT TWO

OCTC Case No. 19-O-12069
Business and Professions Code, section 6068(b)
[Failure to Maintain Respect Due to Courts and Judicial Officers]

3. On or about April 14, 2017, respondent filed a Notice of Appeal in the case entitled *Martinez v. O'Hara, et al.,* Orange County Superior Court case number 30-2012-614932, in which respondent failed to maintain the respect due to the courts of justice and judicial officers by making the following false statement of fact, or opinion implying or based on a false assertion of fact, impugning the honesty, motivation, integrity, or competence of the trial court judicial officer, Commissioner Carmen Luege, by suggesting that the trial court attempted to thwart

service of the judgment on the plaintiff in an effort to evade appellate review, in willful violation of Business and Professions Code section 6068(b):

    a. "Plaintiff never actually received a copy of a signed judgment, though a stipulated judgment was prepared for the commission court's signature, as it apparently cynically attempted to suppress notice of the judgment in order to thwart review."

### COUNT THREE

OCTC Case No. 19-O-12069
Business and Professions Code, section 6068(b)
[Failure to Maintain Respect Due to Courts and Judicial Officers]

4. On or about December 11, 2017, respondent filed a document entitled "Appellant's Opening Brief" in the case entitled *Martinez v. O'Hara, et al.,* Fourth District Court of Appeal case number G054840 (Orange County Superior Court case number 30-2012-614932), in which respondent failed to maintain the respect due to the courts of justice and judicial officers by making the following false statements of fact, and opinions implying or based on false assertions of fact, impugning the honesty, motivation, integrity, or competence of the trial court judicial officer, Commissioner Carmen Luege, by accusing her of *intentionally* refusing to follow the law due to bias against plaintiff and/or his counsel, in willful violation of Business and Professions Code section 6068(b):

    a. "Judge Luege generally ruled during trial like a disinterested broker. . . .

However, her tenor changed during oral argument on [plaintiff's] post-trial motion requesting attorney's fees. She apparently perceived that [plaintiff] insulted former Judge Munoz, and then as a response, translated her anger into an attack on [plaintiff's] fee motion. She issued a mindlessly one-sided ruling—a ruling founded in advocacy rather than analysis if ever there was one—and littered with legal errors, as they always are. . . .

Regardless of the many errors in the ruling at issue, reversal is warranted because the ruling is not a product of good judicial decision making. It's an exercise in advocacy directed at one party founded on a desire to champion a colleague, rather than strictly and accurately following established legal analysis governing the recovery of attorney's fees in these types of situations.

Consequently, the ruling is wrong not just because it is wrong, but because the underlying motivation for issuing this wrongful ruling was also wrong. Commissioner Luege acted as if [plaintiff] disrespected Judge Munoz, but the truth is the opposite—Judge Munoz disrespected [plaintiff], and a whole bunch of other litigants, by abdicating rulings to his research clerk.

       Consequently, the criticism [plaintiff] levied about him in front of Judge Luege—upon being provoked by defense counsel with a false accusation of contempt of his rulings—was not cause for her to overreact by circling the wagons around Munoz and abandoning her duty to fairly and accurately analyze the legal issues before her.

       Nonetheless, she did resort to advocacy by mercilessly attacking [plaintiff's] case in her ruling. The style of it reveals this. Combined with the numerous factual and legal errors, in its totality it represents a quintessential case of abuse of discretion."

b. "The trial court gave three basic reasons for denying fees: . . .

       These reasons do not hold up under scrutiny.

       Furthermore, and considering judicial motivation (delicately), it appears Commissioner Luege was offended that [plaintiff] criticized Judge Munoz's competency, and issued a ruling founded in advocacy as a result. This is detectable because a number of findings and rulings are plainly indefensible: they inexplicably ignore dispositive facts, circumstances and authority tendered to the lower court prior to its issuance of the ruling, limitations that should have changed the analysis had they been seriously dealt with."

c. "For the trial court to characterize this litigation as spectacularly unsuccessful is not only unsupported in light of the record of outcomes, reflecting relief obtained on a number of fronts, but another indication that the ruling was a product of judicial advocacy rather than detached analysis."

d. "Actually, the ruling is easily comprehensible. The lower court abandoned any interest in utilizing detached legal analysis. Rather, she had decided that the penalty for insulting one of the Orange County Superior Court's historically well-regarded judges was death and that her death sentence would be carried out by a wholesale, advocacy-based denial of all compensation.

       That's what happened."

e. "Decisions like this announce advocacy over analysis as openly as wearing a bandana on one's arm."

f. "As detailed above, the trial court's ruling contained numerous factual and legal errors and can be detected to be the product of advocacy rather than analysis."

## COUNT FOUR

Case No. 19-O-12069
Business and Professions Code, section 6068(b)
[Failure to Maintain Respect Due to Courts and Judicial Officers]

5. On or about April 6, 2018, respondent filed a document entitled "Appellant's Reply Brief" in the case entitled *Martinez v. O'Hara, et al.,* Fourth District Court of Appeal case number G054840 (Orange County Superior Court case number 30-2012-614932), in which respondent failed to maintain the respect due to the courts of justice and judicial officers by

1  making the following false statements of fact, and opinions implying or based on false assertions

2  of fact, impugning the honesty, motivation, integrity, or competence of the trial court judicial

3  officer, Commissioner Carmen Luege, by accusing her of *intentionally* refusing to follow the law

4  due to bias against plaintiff and/or his counsel, in willful violation of Business and Professions

5  Code section 6068(b):

a. "[I]t is true that [plaintiff], possessing no other explanation for what was received as a uniquely antagonistic fee ruling by the lower court, has waded into the dangerous waters of judicial motivation. [Defendant] believes that this is the defining fact toward a conclusion that [plaintiff] is blindly attacking trial judges. He is incorrect. There are plenty of rulings that go against a lawyer without being so noticeably (and surprisingly) antagonistic. Counsel has three other civil cases on appeal right now and none of those lower court rulings read like the mindless attack of the instant ruling. It is clearly out of the ordinary in terms of dozens if not hundreds of trial rulings that counsel regularly sees and occasionally appeals.

The question of why this trial judge was motivated to light [plaintiff] up is the subject of relevant appellate inquiry, and as [plaintiff] sees it, there is an explanation in the case file. Understanding that motivation and contrasting it to Rule-of-Law principles and methods is a worthy exercise in [plaintiff's] humble opinion.

It is also true as [defendant] points out that this case, narrowly viewed, requires the Court to merely pass on the merits of a fee ruling. The merits will of course be discussed in detail, the many factual errors confirmed and understood, and so forth. On a straight legal analysis, the trial court's ruling represents an abuse of discretion because she barely got any of the facts straight. But this wasn't incompetence; it was intention. An exercise in judicial advocacy, which is blatantly obvious here, by definition means that the trial judge has elected to subordinate legal accuracy. . . .

Inasmuch as there were correctable deviations from the law, including principally as [plaintiff] contends a decision in the ultimate ruling to feed the lower court's appetite to engage in judicial advocacy, there is hardly any feature of judicial decision-making that needs more to be understood and disincentivized. Judicial advocacy throws the whole Rule-of-Law method back into a primitive state of personality, tribalism and power, and those are ingredients that cause societies to fail.

We can do better."

b. "In the Opening Brief, [plaintiff] documented concerns about the functionality of a retired trial judge, Hon. Gregory Munoz. This would have been irrelevant to the fee motion except that it was counsel's perception during oral argument that discussion of this issue triggered Judge Luege to generate the advocacy opinion she issued."

c. "[F]rom [plaintiff's] viewpoint, the entire structure of the fee ruling by Judge Luege is built around an improper motivation—a product of judicial advocacy in electing to defend Munoz's honor by shooting the messenger—which utterly defeats the governing principles of a Rule-of-Law legal system."

-5-

    d. "And of course, to the extent that a sitting jurist is triggered to champion a colleague, although the motivation may be laudable, when it results in a ruling that is intentionally imbalanced, it doesn't adhere to the greater purpose of Judge Luege's existence as an important servant in our Rule-of-Law paradigm."

    e. "[Plaintiff's] concerns about judicial advocacy by Judge Luege were noted in the Opening Brief and mentioned above. As will be established more fully below, judicial advocacy is at work here. . . .

    [I]f the Court wants to reach some level of objective truth before deciding what legal conclusions to attach to it, the Court—unlike [defendant]—will have to address and dispose of some difficult facts.

    The first difficult fact is that it is effectively undisputed—or at least not addressed with any thoughtfulness—that Judge Luege was triggered to hostility by the Judge Munoz flap and this resulted in an opinion that is structurally composed as an exercise in judicial advocacy.

    Even if the Court agrees with some of Commissioner Luege's conclusions . . . if this Court concludes that the Commissioner undertook to write this opinion by succumbing to an appetite for judicial advocacy, *it must reverse.* There is no path by which a Court of Appeal could, consistent with Rule-of-Law principles, validate a lower court ruling whose structural approach consists of first deciding to impose the harshest possible outcome and then discarding or even contorting the established legal analysis to achieve it."

    f. "The Trial Court Abused Its Discretion By Intentionally Making Mistakes in the Legal Analysis In Service to a Judicial Advocacy Agenda."

    g. "[Defendant] next argues that penalties, as distinct from wages, cannot support a fee award. But first he cites the trial court's intentionally mistaken belief that [plaintiff] was not the prevailing party simply because [defendant] capitulated to pay the wages before the case came up for trial, as if a plaintiff can only prevail by securing a verdict. [Citation.] The point is so utterly lacking in merit among any sophisticated legal mind that [plaintiff] sees this as an example of intentional intellectual dishonesty being generated as an undesirable by-product of judicial advocacy.

    It is also hard to understand how either [defendant] or the trial judge could, in any sort of honest reading of *Ling*, see it as authority in support of a view that penalties based on failure to pay wages are not included in section 218.5's enforcement purview. *Ling* basically says that when the underlying action was for non-payment of wages, the continuing wages accruing as a section 203 penalty *can* be the subject of a fee award. [Citation.] Again, the trial court appears to have made intentional mistakes at the knowing expense of legal accuracy in service to a higher agenda of ruling against [plaintiff] for his perceived political offenses."

    h. "The trial court cited the $870K fee request in *Chavez v. Los Angeles* (2010) 47 Cal.4th 970 as grounds to find [plaintiff's] $144K fee request—which required a jury trial—as comparably excessive in its magnitude. [Citation.]

        [Defendant] repeats the trial court's idea by similarly citing *qualitative* features of *Chavez*. [Citation.] But what they are both silent about is the $726,000 difference between the two requests. It's as if objective numbers do not matter to them. This too marks another example of the trial court's mindless antipathy toward [plaintiff]. *The trial judge intentionally analyzed a quantitative issue—an allegedly excessive request for fees—by resorting to citation of qualitative features.*" [Emphasis in original.]

    i. "Here, the trial judge was motivated to rule against [plaintiff] in what must be the intoxicating effects of wielding the power to break the law, in order to reach a desired result. The lower court relied on the *Chavez* comparison certainly knowing it was a totally—numerically—imbalanced comparison. Yet it forged forward with this comparison riding some sort of superseding objective that subordinated her obligations as a jurist to rule analytically and dispassionately.

        For the trial court to not even *acknowledge* the mathematical difference between Chavez's $870,000 fee request and [plaintiff's] $144,000 request reveals that she ruled without being able to responsibly wield the extraordinary power to make legal findings. Basically, the trial court engineered the result she wanted, *regardless of the law,* by intentionally analogizing to a case that even a first-year law student would understand to be distinguishable. [Emphasis in original.]

        And for what. Because [plaintiff] dared to question the competency of one of her colleagues? As the record stands before this Court, Judge Munoz's competency issues at the described moment are *undisputed.* Yet, the Orange County judiciary as Commissioner Luege perceives it is so fragile and so intolerant of any suggestion of an unpopular truth—in contravention of Canons of Judicial Performance that require judges to have immovably thick hides, see Canon 3—that when Plaintiff formalized the perception and she apparently saw this material in her "complete review of the file," [citation], this triggered her Henry-the-Eighth exercise against [plaintiff]."

    j. "The lower court made numerous factual errors. Its ruling cannot be considered a responsible exercise in discretionary adjudication with so much foundational error. Moreover, these mistakes were not the product of it being incapable of understanding the law or applying the facts to them. It was because she intentionally decided to let her master for this motion be not the law, but an adversarial agenda to rule against one party regardless of it. This is why there are so many mistakes in the opinion: because accuracy was not the goal: outcome was.

        Submission to such an appetite reveals that the lower court did not wield power responsibly. Such an opinion is structurally reversible because, *a fortiori,* it abandons analytical discipline in favor of political or interpersonal objective. We have a political system: the legislature. The judicial system is supposed to run on facts, evidence and rules, not personality, popularity or majority. Commissioner Luege's decision to not respect this distinction constitutes a failure of restraint."

/ / /

/ / /

**NOTICE - INACTIVE ENROLLMENT!**

**YOU ARE HEREBY FURTHER NOTIFIED THAT IF THE STATE BAR COURT FINDS, PURSUANT TO BUSINESS AND PROFESSIONS CODE SECTION 6007(c), THAT YOUR CONDUCT POSES A SUBSTANTIAL THREAT OF HARM TO THE INTERESTS OF YOUR CLIENTS OR TO THE PUBLIC, YOU MAY BE INVOLUNTARILY ENROLLED AS AN INACTIVE ATTORNEY OF THE STATE BAR.  YOUR INACTIVE ENROLLMENT WOULD BE IN ADDITION TO ANY DISCIPLINE RECOMMENDED BY THE COURT.**

**NOTICE - COST ASSESSMENT!**

**IN THE EVENT THESE PROCEDURES RESULT IN PUBLIC DISCIPLINE, YOU MAY BE SUBJECT TO THE PAYMENT OF COSTS INCURRED BY THE STATE BAR IN THE INVESTIGATION, HEARING AND REVIEW OF THIS MATTER PURSUANT TO BUSINESS AND PROFESSIONS CODE SECTION 6086.10.**

**NOTICE – MONETARY SANCTION!**

**IN THE EVENT THIS MATTER RESULTS IN ACTUAL SUSPENSION, DISBARMENT, OR RESIGNATION WITH CHARGES PENDING, YOU MAY BE SUBJECT TO THE PAYMENT OF A MONETARY SANCTION NOT TO EXCEED $5,000 FOR EACH VIOLATION, TO A MAXIMUM OF $50,000 PER DISCIPLINARY ORDER, PURSUANT TO BUSINESS AND PROFESSIONS CODE SECTION 6086.13. SEE RULE 5.137, RULES OF PROCEDURE OF THE STATE BAR OF CALIFORNIA.**

Respectfully submitted,

THE STATE BAR OF CALIFORNIA
OFFICE OF CHIEF TRIAL COUNSEL

DATED: _____   By: _____
Kristin L. Ritsema
Senior Trial Counsel