OFFICES OF

**PAVONE &**  **FONNER, LLP**

<u>A LAW PARTNERSHIP</u>

**BENJAMIN PAVONE, ESQ.**
**STATE BAR NUMBER 181826**
600 WEST BROADWAY, SUITE 700
SAN DIEGO, CALIFORNIA  92101
TELEPHONE: 619 224 8885
FACSIMILE: 619 224 8886
EMAIL: bpavone@cox.net

<u>ATTORNEYS FOR THE PLAINTIFF</u>

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

**BENJAMIN PAVONE**

   **PLAINTIFF,**

**v.**

**STATE BAR OF CALIFORNIA, OFFICE OF CHIEF TRIAL COUNSEL ENFORCEMENT;**

   **DEFENDANT.**

**CASE NO.: 2-20-cv-07193 FMO (PDx)**

**PLAINTIFF'S POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PERMANENT INJUNCTION**

**Date: To be Set**
**Time: To be Set**
**Dept: 350 W. 1st Street, Court 6D**
**Judge: Hon. Fernando M. Olguin**

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................ 7

STATEMENT OF FACTS ........................................................................................ 8

    A.  Underlying Martinez Case ............................................................................ 8

I.   THE YOUNGER DOCTRINE DOES NOT APPLY. ........................................ 11

II.  ALL FOUR COUNTS OF THE STATE BAR'S NDC FAIL TO STATE A
      DISCIPLINABLE OFFENSE IN LIGHT OF THE EXPANSIVE FREE
      SPEECH RIGHTS FOR ATTORNEYS TO CRITICIZE JUDGES. .................. 12

    A.  Summary of the State Bar's NDC Charging Document................................. 12

    B.  B&P 6068(b)'s Limited Enforceability given the First Amendment. .......... 12

    C.  First Amendment Limitations of Section 6068 Applied to Count 1. ........... 15

        1.  On its Face, the Comment is not a Criticism of the Judge but of
            the Judge's Ruling.   Hyperbolic Characterizations of Rulings
            are not Actionable as B&P 6068(b) Violations. ................................. 15

        2.  The Succubus Comment is Textbook "Rhetorical Hyperbole,"
            Could Not Reasonably Be Construed as a Statement of Fact, and
            is Thus Clearly Protected by the First Amendment. ......................... 18

        3.  The Succubus Comment Cannot Be Proven True or False. ............ 20

        4.  The "Disgraceful Order" Aspect of Count 1 is not an Assertion
            about the Judge, and Even if it Were, It Would Clearly Constitute
            Protected First Amendment Opinion. ............................................... 21

        5.  "Manifesting Gender Bias" is not Factual and Specific. .................. 21

    D.  First Amendment Limitations of Section 6068 Applied to Count 2. .......... 21

    E.  First Amendment Limitations of Section 6068
        Applied to Counts 3 and 4. ........................................................................ 23

III.  B&P 6068(b) IS UNCONSTITUTIONAL.  ITS OPERATION IS
      UNENFORCEABLE IN LIGHT OF THE IRRECONCILABLE NATURE
      OF THE ALMOST INFINITE RANGE OF CRITICISMS THAT MAY
      CAUSE A JUDGE TO FEEL "DISRESPECTED," AS JUXTAPOSED
      AGAINST THE NUMEROUS PERMISSIBLE FORMS OF CRITICISM
      PERMITTED BY THE FIRST AMENDMENT. .......................................... 24

    A.  B&P 6068(b) is Overbroad ...................................................................... 24

    B.  B&P 6068(b) is Also Vague. .................................................................... 28

CONCLUSION......................................................................................................... 29

PAVONE & FONNER, LLP

# **TABLE OF AUTHORITIES**

## **_Cases_**

_Adams v. Comm'n on Judicial Performance_
(1994) 8 Cal.4th 630 ............................................................................ 26

_Baumgartner v. United States_
(1944) 322 U.S. 665 ............................................................................ 19

_Berner v. Delahanty_
(1st Cir. 1997) 129 F3d 20 .................................................................. 25

_Blodgett v. Superior Court_
(1930) 210 Cal. 1 ................................................................................ 24

_Bridges v. California_
(1941) 314 U.S. 252 ................................................................ 26, 28, 29

_Butterworth v. Smith_
(1990) 494 U.S. 624 ............................................................................ 13

_Canatella v. California_
404 F.3d 1106 (9th Cir. 1995) ............................................................ 11

_Cianci v. New Times_
(2d Cir. 1980) 639 F.2d 54 ................................................................. 28

_Daily v. Monterey_
(1935) 4 Cal.App.2d 127 ................................................................ 12-13

_Garrison v. Louisiana_
(1964) 379 U.S. 64 ........................................................................ 21, 26

_Gentile v. State Bar_
(1991) 501 U.S. 1030 .................................................................... 13, 28

_Grayned v. City of Rockford_
(1972) 408 U.S. 104 ...................................................................... 13, 28

_Greenbelt v. Bresler_
(1970) 398 U.S. 6 .......................................................................... 20, 29

_Hirsh v. Justices_
67 F.3d 708 (9th Cir. 1995) ................................................................ 11

_Hume v. Superior Court_
(1941) 17 Cal.2d 506 ...................................................................... 24-25

_Hustler Magazine v. Falwell_
(1988) 485 U.S. 46 ..................................................................... passim

PAVONE & FONNER, LLP

PAVONE & FONNER, LLP

*In re Buckley*
    (1973) 10 Cal. 3d 237 ............................................................ 24

*In re Ciraolo*
    (1969) 70 Cal.2d 389 ...................................................... 13, 24

*In re Danneker*
    (1885) 67 Cal. 643 ......................................................... 12-13

*In re Elkins*
    (Rev. Dept. 2009) 5 Cal. State Bar Ct.Rptr. 160 ................... 15-16

*In re Friday*
    (1934) 138 Cal.App. 660 ..................................................... 25

*In re Koven*
    (2005) 134 Cal.App.4th 262 ................................................ 25

*In re Snyder*
    472 U.S. 634 (1985) .......................................................... 19

*In re Swan*
    (C.D. Cal. 1993) 833 F.Supp. 794 ..................................... 13-14

*Iowa v. Weaver*
    (2008) 750 N.W.2d 71 ........................................................ 23

*Kleenwell* v. *Nelson*
    48 F.3d 391 (9th Cir. 1995) ................................................ 11

*Knievel v. ESPN*
    (9th Cir. 2004) 393 F.3d 1068 ......................................... 18-19

*Lamberson v. Superior Court*
    (1907) 151 Cal. 458 ........................................................... 24

*Levinsky's v. Wal-Mart*
    (1st Cir. 1997) 127 F.3d 122 .............................................. 19

*Lewis v. Time*
    (9th Cir. 1983) 710 F.2d 549 ............................................. 20

*Marbury v. Madison*
    5 U.S. 137 (1803). ............................................................ 30

*Martinez v. California*
    (2015) 238 Cal.App.4th 559 ........................................... 12, 25

*Martinez v. O'Hara*
    (2019) 32 Cal.App.5th 853 ........................................... passim

PAVONE & FONNER, LLP

*Matter of Shay*
(1911) 160 Cal. 399 ................................................................ 24

*Milkovich v. Lorain*
(1990) 497 U.S. 1 ................................................................ 20, 29

*Moody v. Staar*
(2011) 195 Cal.App.4th 1043 ................................................ 12, 13, 25

*National Ass'n of Letter Carriers v. Austin*
(1974) 418 U.S. 264 ....................................................... 8, 19-20, 29

*New Orleans v. City Council*
491 U.S. 350 (1989) ............................................................ 11

*New York Times v. Sullivan*
376 U.S. 254 (1964) ............................................................ 19

*Nygard v. Uusi-Kerttula*
(2008) 159 Cal.App.4th 1027 ................................................ 19, 23

*Ohio v. Dayton Christian*
477 U.S. 619 (1986) ............................................................ 11

*O'Neill v. Coughlan*
511 F.3d 638 (6th Cir. 2008) ................................................ 11

*Philadelphia Newspapers v. Hepps*
(1986) 475 U.S. 767 ............................................................ 21, 26

*Quackenbush v. Allstate*
517 U.S. 706 (1996) ............................................................ 11

*Ramirez v. State Bar*
(1980) 28 Cal.3d 402 ....................................................... 13, 26-28

*Reaves v. Westinghouse*
(D.Md. 1988) 683 F.Supp. 521 .............................................. 17

*Rodgers v. State Bar*
(1989) 48 Cal.3d 300 ....................................................... 12-13

*Snyder v. State Bar*
(1976) 18 Cal.3d 286 ........................................................... 25

*Sprint v. Jacobs*
571 U.S. 69 (2013) ............................................................ 11

*Standing Committee v. Yagman*
(9th Cir. 1995) 55 F.3d 1430 ............................................. passim

*Standing Committee v. Yagman*
　　(C.D. Cal. 1994) 856 F.Supp. 1384 ............................................................. 15, 23

*United States v. Wunsch*
　　(9th Cir. 1996) 84 F.3d 1110 ................................................................ 14, 24, 27

*Younger v. Harris*
　　401 U.S. 37 (1971) ......................................................................................... 7, 11

### ***Statutes & Other Authority***

Business & Professions Code

　　Section 6068(b) ...................................................................................... passim

California Code of Civil Procedure

　　Section 170.6 ................................................................................................. 13

California Rules of Court

　　Rule 8.104(a) ................................................................................................. 22

California Rules of Professional Conduct

　　Rule 8.4.1 ................................................................................................... 7, 21

Marshall, Jack, "*Ethics Quote of the Week: California Attorney
　　Benjamin Pavone*," EthicsAlarms, Website: https://ethicsalarms.com
　　(March 5, 2019) ................................................................................................28

Restatement (Second) of Torts (1977)

　　Section 566 .................................................................................................... 20

*Succubus (Dungeons and Dragons 5th Edition)*," Succubus.net,
　　Website: http://www.succubus.net (September 16, 2020) ................................. 28

PAVONE & FONNER, LLP

1

2

3

4

5

6

7

8

9

10

11

PAVONE & FONNER, LLP

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# INTRODUCTION

The normal outcome when a litigant seeks to interrupt a state court action is that he runs into the concrete wall of *Younger*.  Not here.  Plaintiff filed this action before the state action.  *Younger* is not a bar.  Consequently, Plaintiff is entitled to adjudicate this case in this, the earlier forum, which is also the one that is most expert in First Amendment constitutional law.

The state case is a California State Bar enforcement action seeking to penalize a lawyer, your undersigned counsel, for criticizing an Orange County trial commissioner's fee ruling in a notice of appeal.

Language in this notice was read by the OC appellate court and triggered it to publish an opinion lambasting counsel as a gender felon.  The notice included the following comment:

> The [fee] ruling's succubustic adoption of the defense position, and resulting validation of the defendant's pseudohermaphroditic misconduct, prompt one to entertain reverse peristalsis unto its four corners.

The state appellate court referred the matter to the California State Bar for an ethics prosecution, while projecting to the national trade media that counsel violated current California Ethics Rule 8.4.1.  As a result, the case quickly burned through the blogger circuit, complete with cartoon photos of sexualized winged demons, whereby counsel was taken to the internet woodshed as a gender offender.

However, the OC appellate court was less transparent – in fact one might say the court was pretty furtive – about the inconvenient fact that the gender rule it was citing did not exist when the notice of appeal was filed.  That rule would only be passed a year and a half later.  By *ex post facto* definition, it could not support the appellate court's public gender accusation.

That does not negate the comment, as a political mistake is still a political mistake.  But the State Bar nevertheless proceeded with a case, on an alternate theory, contending that B&P 6068(b)'s "due respect" provision was violated.  However,

punishment for the subject remark under this theory raises thorny constitutional questions about attorney free speech and the First Amendment.  More pointedly, the comment is textbook "rhetorical hyperbole" and protected under the *Letter Carriers*/*Hustler*/*Yagman* line of cases.

The state appellate court's eagerness to publicly humiliate and excoriate counsel as a gender felon without in any way considering these dispositive federal constitutional limitations is a good reason for this Court, apart from its basic jurisdictional obligations, to assume management of this case over the California state courts, in order to assure that restrictions imposed by the First Amendment will *(i)* be registered as an issue; *(ii)* be properly viewed as a serious limitation and *(iii)* accurately analyzed under controlling federal constitutional precedent.

## STATEMENT OF FACTS

### A.  Underlying *Martinez* Case

The underlying litigation concerned an employment dispute, between a real estate agent, who put up a fraudulent website to attract young people into his orbit, and a young person thereby enticed.[1]  The plaintiff, Fernando Martinez, had been invited to apply for lucrative employment by Stephen O'Hara as a pretext for O'Hara to seduce him.  The situation ended quickly and badly for Martinez.  He recovered a modest $8K verdict from a jury on a sexual harassment theory.[2]  The litigation also terminated the website and recovered a few shekels in outstanding wages.[3]

Despite statutory fee shifting, the OC trial court denied all recovery, for various reasons, one of the more memorable ones being its finding that the action should have been filed in limited civil.[4]  (This was flatly impermissible for a case seeking – and later

---

[1]   Declaration of Benjamin Pavone ("BLP"), ¶ 1; Exhibit 1 (Fifth Amended Complaint).
[2]   BLP ¶ 2, Exhibit 2 (verdict).
[3]   BLP ¶ 3.
[4]   BLP ¶ 4, Exhibit 3 (fee ruling).

PAVONE & FONNER, LLP

obtaining – injunctive relief.)  These kinds of controversial legal positions by the OC trial court triggered the criticism under review.[5]

Martinez appealed the fee ruling in a notice of appeal dated April 4, 2017.[6]  That is the notice containing the subject remark.[7]  It also included a protest that the OC trial court had seemingly attempted to thwart review of its ruling by not serving the signed judgment.[8]

Thereafter, in due course, Martinez filed his opening[9] and reply briefs.[10]  Among the arguments within them was that a study of the OC trial court's legal positions revealed that the trial court must have knowingly violated the law in order to rule against Martinez.[11]

Beyond the example above, the OC court characterized counsel's effort for the *Martinez* case as excessive, citing a case called *Chavez*, without any reconciliation of the fact that the *Chavez* plaintiff sought $870,000 in fees, whereas undersigned counsel sought a mere $144,000.  Citing *Chavez* without reconciling this disparity in dollar-figure fee requests was analogous to citing counsel for violating the basic speed law while counsel was driving 14 mph.  It felt like an intentional deviation from normative adjudication.

On February 28, 2019, the OC appellate court rendered its decision.  It declined to publish any of the substantive issues about the Martinez-O'Hara employment dispute. It denied all fees.  Instead it published that part of the opinion dedicated to criticizing counsel for the sentence in the notice of appeal: "to make the point that gender bias by an attorney appearing before us will not be tolerated, period."[12]  The Court was otherwise

---

[5]  BLP ¶ 5.
[6]  BLP ¶ 6, Exhibit 4 (notice of appeal).
[7]  BLP ¶ 6, Exhibit 4 (notice of appeal).
[8]  BLP ¶ 6, Exhibit 4 (notice of appeal).
[9]  BLP, ¶ 7; Exhibit 5 (opening brief).
[10]  BLP, ¶ 8; Exhibit 6 (reply brief)
[11]  BLP, ¶¶ 7-8, Exhibits 5-6 (opening and reply briefs).
[12]  *Martinez v. O'Hara* (2019) 32 Cal.App.5th 853, 855.

PAVONE & FONNER, LLP

apparently unmoved by the fraudulent website, the sexual abuse O'Hara inflicted on Martinez, countless other victims O'Hara had financially destroyed, or the ugly way O'Hara sought to dispose of Martinez, after the relationship soured.[13]

The OC characterized the subject remark as "manifesting gender bias," as well as citing the comment about thwarting review, and faulting undersigned counsel for accusing the OC trial judge of intellectual dishonesty, all without "any evidence."[14]

The California Supreme Court moved the resulting petition to the second stage of consideration,[15] based on a serious criticism of the "harmless error" doctrine.[16]  However, it ultimately denied review in June, 2019, which ended Martinez's case.

Meanwhile, the State Bar investigated the OC appellate court's ethics complaint. The Bar and Plaintiff exchanged correspondence over the course of a year from 2019-2020 that culminated in an informal conference in July 2020 with a third-party state bar court judge, but the parties were unable to resolve the matter.

On August 11, 2020, just after midnight, Plaintiff filed this action.[17]

Sometime after the State Bar clerk's office opened later that morning, still on August 11, 2020, the State Bar filed its Notice of Disciplinary Charges (NDC), the Bar's charging document.[18]

The Bar's NDC closely tracks the OC appellate court's grievances, by alleging four counts, for (1) the succubus remark, (2) thwarting review, and two counts (3-4) of alleging intellectual dishonesty, all assertedly in violation of B&P section 6068(b).[19]  The Bar's action is currently pending, with a motion to dismiss similar to this filing to be placed on calendar as soon as this motion is filed and thus creating the legal emergency.[20]

---

[13]  BLP, ¶ 1, Exhibit 1 (Fifth Amended Complaint).
[14]  *Martinez v. O'Hara* (2019) 32 Cal.App.5th 853, 855.
[15]  *Martinez v. O'Hara* (2019) 2019 Cal. Lex. 3979.
[16]  BLP, ¶ 9, Exhibit 7 (petition for review).
[17]  BLP, ¶ 10, Exhibit 8 (2020-08-11 – email confirmation of federal complaint filing).
[18]  BLP, ¶ 11, Exhibit 9 (NDC).
[19]  BLP, ¶ 11, Exhibit 9 (NDC).
[20]  BLP, ¶ 14.

PAVONE & FONNER, LLP

This motion seeks to shut down the State Bar lawsuit, as all of the NDC charges infringe on permissible First Amendment speech.  There is no *Younger* basis for this Court to decline to adjudicate these weighty federal constitutional issues in preference to the State Bar Court, since Plaintiff filed this action before the State Bar action was filed.[21]

This Court is also a preferred forum, because the record in this case reflects a significant failure of the state courts to appreciate the breadth of the First Amendment, blithely assuming that every insult directed at a judge qualifies as a 6068(b) violation, which underscores the need for federal intervention to protect this most precious of constitutional rights.

Indeed, a study of the state case law reflects its intractability vis-à-vis the federal case law.   Accordingly, Plaintiff also seeks to invalidate B&P section 6068(b) as unconstitutional, in the same way that B&P section 6068(f) was previously declared unconstitutional: they are both overbroad and they are both enforced in violation of fundamental First Amendment rights, including and especially, in this case.

As a 25th year practicing California attorney, undersigned counsel's State Bar record is otherwise unblemished.[22]

## I.
## THE *YOUNGER* DOCTRINE DOES NOT APPLY.

The *Younger* doctrine is a narrow exception to the duty of a district court to adjudicate every case before it.[23]  In some cases, the doctrine allows the district court to abstain, such as when state proceedings have already been commenced.[24]  However, where the federal case was filed first in time, the elements of abstention are not met.[25]

---

[21]  *Canatella v. California*, 404 F.3d 1106, 1115 (9th Cir. 1995).
[22]  BLP, ¶ 11, Exhibit 9 (NDC).
[23]  *Sprint v. Jacobs*, 571 U.S. 69, 72-73 (2013); *Younger v. Harris*, 401 U.S. 37 (1971); *Quackenbush v. Allstate*, 517 U.S. 706, 728 (1996); *New Orleans v. City Council*, 491 U.S. 350, 359 (1989)
[24]  *Ohio v. Dayton Christian*, 477 U.S. 619, 626 (1986); *Kleenwell* v. *Nelson*, 48 F.3d 391, 393-394 fn. 3 (9th Cir. 1995); *O'Neill v. Coughlan*, 511 F.3d 638, 643 (6th Cir. 2008).
[25]  *Hirsh v. Justices*, 67 F.3d 708, 712 (9th Cir. 1995); *Canatella v. California*, 404 F.3d 1106, 1110 (9th Cir. 1995).

PAVONE & FONNER, LLP

**II.**

**ALL FOUR COUNTS OF THE STATE BAR'S NDC FAIL TO STATE A DISCIPLINABLE OFFENSE IN LIGHT OF THE EXPANSIVE FREE SPEECH RIGHTS FOR ATTORNEYS TO CRITICIZE JUDGES.**

### A.  Summary of the State Bar's NDC Charging Document

The State Bar's Notice of Disciplinary Charges sets forth the following counts:

(1)  an alleged B&P 6068(b) disrespect violation anchored by a phrase in a notice of appeal calling a judge's ruling a 'succubistic adoption of the defense position';

(2)  an alleged B&P 6068(b) disrespect violation for language in that same notice anchored by language that the trial judge "cynically attempted to suppress notice of the judgment in order to thwart review";

(3)  an alleged B&P 6068(b) disrespect violation for a series of legal arguments in an opening appellate brief in part contending that Commissioner Carmen Luege intentionally deviated from the law in a fee motion ruling; and

(4)  an alleged B&P 6068(b) disrespect violation for an additional series of arguments in the reply brief in part asserting the same thing, that she must have known her positions were contrary to law given so much deviation from normative legal analysis.[26]

### B.  B&P 6068(b)'s Limited Enforceability given the First Amendment.

Business & Professions Code section 6068(b) states that it is the duty of an attorney to maintain "the respect due to the courts of justice and judicial officers." (Bus. & Prof. Code, § 6068(b).)   The statute does not further define the term nor provide any other content to understand exactly what constitutes "due respect."  The state case law holds that, an attorney, as an officer of the court, possesses an obligation to facilitate the orderly administration of justice.[27]  Accepting this, the disciplinary rules governing the legal profession cannot punish activity protected by the First Amendment.[28]

Historically, this extraordinarily broad term – due respect – gravitated toward prohibiting deception of the court,[29] disobeying court orders,[30] or challenging the court's

---

[26]  BLP, ¶ 11, Exhibit 9 (NDC).

[27]  *Moody v. Staar* (2011) 195 Cal.App.4th 1043, 1048; *Martinez v. California* (2015) 238 Cal.App.4th 559, 568-569.

[28]  *Gentile v. State Bar* (1991) 501 U.S. 1030, 1054.

[29]  *In re Danneker* (1885) 67 Cal. 643, 645; *Daily v. Monterey* (1935) 4 Cal.App.2d 127, 131; *Rodgers v. State Bar* (1989) 48 Cal.3d 300, 315.

PAVONE & FONNER, LLP

authority.[31]  Through the 1980's, the rule seemed to expand to include almost any kind of criticism of a judge or his rulings.[32]  After this, the rule started to run into problems.

A series of federal cases in the 1990s return the rule that criticism of judges, even personal or bitter criticism, falls within the First Amendment.  Criticism of the judiciary, which is part of the government, happens to be a core First Amendment right.[33]

Indeed, criticism by and between judges and attorneys, by characterizing each other's positions as contrary to the law is practically the central feature of litigation.[34]

In 1991, the US Supreme Court decided *Gentile v. State Bar*.[35]  Within its opinion, it commented:

> Unlike other First Amendment cases … [Gentile's] words were directed at public officials and their conduct in office.  There is no question that speech critical of the exercise of the State's power lies at the very center of the First Amendment.[36]

The Supreme Court went on to invalidate the Nevada rule Gentile was charged with violating.  It concluded that the rule's permission to describe the 'general nature of the offense without elaboration' provided counsel no fixed principle for determining when his remarks would pass from permissible to impermissible,[37] a concern that is even more pointed for "due respect."

---

[30]  *Moody v. Staar* (2005) 195 Cal.App.4th 1043, 1048

[31]  *In re Danneker* (1885) 67 Cal. 643, 645; *Daily v. Monterey* (1935) 4 Cal.App.2d 127, 131; *Rodgers v. State Bar* (1989) 48 Cal.3d 300, 315; *In re Ciraolo* (1969) 70 Cal.2d 389, 394-395.

[32]  *Ramirez v. State Bar* (1980) 28 Cal.3d 402, 411 [citing a lawyer for stating that judges acted "unlawfully" and "illegally"].

[33]  *Gentile v. State Bar* (1991) 501 U.S. 1030, 1036, *citing Butterworth v. Smith* (1990) 494 U.S. 624, 632.

[34]  *In re Swan* (C.D. Cal. 1993) 833 F.Supp. 794, 800 ["we are fully cognizant that attorneys criticize other attorneys, that attorneys criticize the courts and the decisions they render, and that judges often criticize attorneys"]; *see* Code Civ. Proc., § 170.6; *Standing Committee v. Yagman* (9th Cir. 1995) 55 F.3d 1430, 1440.

[35]  *Gentile v. State Bar* (1991) 501 U.S. 1030.

[36]  *Gentile v. State Bar* (1991) 501 U.S. 1030, 1034-1035, *citing Butterworth v. Smith* (1990) 494 U.S. 624, 632.

[37]  *Gentile v. State Bar* (1991) 501 U.S. 1030, 1048-1049, *citing Grayned v. City of Rockford* (1972) 408 U.S. 104, 112.

PAVONE & FONNER, LLP

PAVONE & FONNER, LLP

1
2
3
4

Following *Gentile*, in 1993, a defense lawyer named Frank Swan was upset because his opposing counsel, a female US attorney, secured his disqualification.[38]  He wrote a letter to her with a page attached stating in all capitals that "male lawyers play by the rules, discover truth and restore order.  Female lawyers are outside the law, cloud truth and destroy order."[39]

5
6

At the trial level, Swan got censured under both the local rules in federal court, as well as B&P section 6068(f), the rule prohibiting "offensive personality."[40]

7
8
9
10

On appeal to the Ninth Circuit, the local rule violations were reversed for lack of prejudice and the Ninth Circuit invalidated B&P 6068(f) as unconstitutionally vague.[41] Notably, Swan's gender language was unquestionably more clear, more real, more direct, and thus more severe than the fictional gender allusion alleged in the instant case.

11
12
13

Meanwhile, in 1995, the Ninth Circuit also decided *Standing Committee v. Yagman*.[42] Attorney Yagman had issued a long series of scathing, personal criticisms directed at a Judge Keller:

14
15

(1)    Judge Keller "has a penchant for sanctioning Jewish lawyers: me, David Kenner and Hugh Manes. I find this to be evidence of anti-Semitism";

16

(2)    Yagman claimed Keller was "drunk on the bench";

17

(3)    Yagman informed a judicial feedback company that it was an understatement to say that Judge Keller was ""the worst judge in the central district";

18
19

(4)    Yagman: "It would be fairer to say that he is ignorant, dishonest, ill-tempered, and a bully";

20
21

(5)    Yagman: "If television cameras ever were permitted in his courtroom, the other federal judges in the Country would be so embarrassed by this buffoon that they would run for cover";

22
23
24

(6)    Yagman: "One might believe that some of the reason for this sub-standard human is the recent acrimonious divorce through which he recently went: but talking to attorneys who knew him years ago indicates that, if anything, he has mellowed";

25

26    [38]    *In re Swan* (C.D. Cal. 1993) 833 F.Supp. 794, 795-796.
27    [39]    *In re Swan* (C.D. Cal. 1993) 833 F.Supp. 794, 796.
        [40]    *In re Swan* (C.D. Cal. 1993) 833 F.Supp. 794, 800.
28    [41]    *United States v. Wunsch* (9th Cir. 1996) 84 F.3d 1110, 1116-1118.
        [42]    *Standing Committee v. Yagman* (9th Cir. 1995) 55 F.3d 1430.

(7)   Yagman: "One other comment: his girlfriend . . ., like the Judge, is a right-wing fanatic."[43]

At the district court level, Yagman got censured.[44]  The Ninth Circuit reversed all charges.  It found the anti-Semitic accusation to be opinion based on facts disclosed,[45] found the drunk comment unmet by the Committee's burden of proof,[46] found the assertion of dishonesty as insufficient to "reasonably be understood as imputing specific criminal or other wrongful acts,"[47] and found the remainder of Yagman's insults as merely reflecting "contempt" of that judge, not a specific, factual assertion of corruption.[48]

Notably, the Ninth Circuit also tackled that species of "dishonesty" regarded as "intellectual dishonesty."[49]  It eliminated these criticisms from the universe of 6068(b) by treating them as unprovable opinions.[50]

Precious little is left of 6068(b) given an application of these rules to complaints about an attorney's criticism of a judge.  Based on *Yagman*, for such a criticism to fall outside the protection of the First Amendment and thus within enforceable B&P 6068(b) territory, it basically has to communicate a *specific*, *factual*, *objectively provable*, *corruption-related crime*.[51]  As will be demonstrated below, the comments made in the *Martinez* case undergirding the Bar's NDC fall well-below such a bar.

## C.   First Amendment Limitations of Section 6068 Applied to Count 1.

### 1.   On its Face, the Comment is not a Criticism of the Judge but of the Judge's Ruling.   Hyperbolic Characterizations of Rulings are not Actionable as B&P 6068(b) Violations.

Count 1 is the "succubus" comment made in a 2017 notice of appeal.[52]

---

[43]  *Standing Committee v. Yagman* (9th Cir. 1995) 55 F.3d 1430, 1434, and fn. 4.
[44]  *Standing Committee v. Yagman* (C.D. Cal. 1994) 856 F.Supp. 1384, 1395.
[45]  *Standing Committee v. Yagman* (9th Cir. 1995) 55 F.3d 1430, 1440.
[46]  *Standing Committee v. Yagman* (9th Cir. 1995) 55 F.3d 1430, 1441.
[47]  *Standing Committee v. Yagman* (9th Cir. 1995) 55 F.3d 1430, 1440.
[48]  *Standing Committee v. Yagman* (9th Cir. 1995) 55 F.3d 1430, 1441.
[49]  *Standing Committee v. Yagman* (9th Cir. 1995) 55 F.3d 1430, 1441.
[50]  *Standing Committee v. Yagman* (9th Cir. 1995) 55 F.3d 1430, 1441.
[51]  *See, e.g.*, *In re Elkins* (Rev. Dept. 2009) 5 Cal. State Bar Ct.Rptr. 160, 167 ("bribery").
[52]  BLP, ¶ 11, Exhibit 9 (NDC).

PAVONE & FONNER, LLP

The background of this charge starts in Division Three of the Fourth District, sitting in Orange County, which observed in *Martinez v. O'Hara*:

> The notice of appeal [in April, 2017] signed by Mr. Pavone on behalf of plaintiff referred to the ruling of the female judicial officer as "succubustic." A succubus is defined as a demon assuming female form which has sexual intercourse with men in their sleep. We publish this portion of the opinion to make the point that gender bias by an attorney appearing before us will not be tolerated, period.[53]

The controversial part of the sentence, "the ruling's succubustic adoption of the defense position," does not refer to the judge. It's an adjective describing the ruling. The *Martinez* panel acknowledged this but still concluded that the comment "manifested" gender bias.

The linguistic imprecision in the court's, and Bar's, theory represents a fatal legal problem. The challenged language does not say "Commissioner Luege is a succubus," in the same way Attorney Yagman directly called Judge Keller "dishonest," a "sub-standard human,"[54] or the way Attorney Elkins accused Judge Murphy of "bribery."[55]

In order to get from the language utilized, which is reference to a ruling, to one describing the judge, one has to rewrite that language. Plaintiff fails to see how, in the first instance, the State Bar or anyone has a right to rewrite a one-off comment from what it says to something more ethically controversial, by graduating the remark from a description of a thing to an *ad hominem* attack on a person, all in search of a more viable 6068(b) violation.

If the State Bar admits that its argument is not founded in an *ad hominem* theory, but that calling a judge's <u>*ruling*</u> 'succubistic' is itself disrespectful, then it runs into a series of different roadblocks. First, the Bar must at least identify what the exact mechanism of disrespect is. What is its exact factual theory? What does the Bar contend that authoring a 'succubistic ruling' exactly communicates about a judge?

---

[53]  *Martinez v. O'Hara* (2019) 32 Cal.App.5th 853, 855.

[54]  Among many other insults: "ignorant," "ill-tempered," a "buffoon," a "right-wing fanatic," a "bully" and "one of the "worst judges in the United States." *Standing Committee v. Yagman* (9th Cir. 1995) 55 F.3d 1430, 1440.

[55]  *In re Elkins* (Rev. Dept. 2009) 5 Cal. State Bar Ct.Rptr. 160, 167, 2009 Calif. Op. Lexis 5.

PAVONE & FONNER, LLP

The whole concept seems fanciful, vague and unenforceable.  Authorship of a 'succubistic judicial opinion,' whatever meaning the Bar attaches to that, cannot constitute a direct factual statement about the judge's moral integrity, any more than writing a murder novel makes Stephen King a killer.

Counsel explained in private correspondence with the Bar that he meant that the ruling was so indistinguishable from the defense position, it was as if the two were sexually interlocked.  Is *that* the Bar's theory?  Even so, is that really any different than calling an argument "intellectually promiscuous"?[56]  Is any of this worse than *Hustler*?  How could any criticism of a ruling be viewed as more caustic than if it had been characterized as having "engaged in a drunken incestuous rendezvous, with [its] mother, in an outhouse?"[57]

Indeed, in *Hustler*, which is cited and incorporated as part of the First Amendment 6068(b) limitations adopted by *Yagman*, Larry Flynt's language is a direct reference to the character of the defendant himself.  Flynt was saying that this encounter was a personal description of Falwell's first time having sex, and that he, Reverend Falwell, was the kind of person who would commit *incest*, *with his mother*, *in an outhouse*.

Counsel's comment is one step removed from a permissible direct insult, and an exponent more rhetorical.  Falwell did have a mother, he might have lived at one point in his life on a property with an outhouse, and he probably had had sex.  Is there any way any aspect of being indirectly accused of being a succubus – a winged demon which has no earthly body and only changes into human form at night – realistically describes any sitting judge?  No.

There is no obvious rule that limits how descriptive language can criticize a judge's ruling.  B&P 6068(b) requires the attorney to show the judge "due respect."  But the federal constitutional case law restricts such factual insults to ones directly questioning the judge's moral character.

The inclusion of colorful descriptions of judicial rulings into this calculus – aka objects associated with the judge – raises troubling questions of degree.  What about staff?  If a lawyer

---

[56] *Reaves v. Westinghouse* (D.Md. 1988) 683 F.Supp. 521, 526.
[57] *Hustler Magazine v. Falwell* (1988) 485 U.S. 46, 48.

called the bailiff a pimp,[58] would he have disrespected the judge?  What about the Court's unrelated writings, like a law review article?  Are they taboo too?   Or his other personal effects?  Can a lawyer be cited for insulting the judge's pictures hanging in the courtroom, for the kind of car he drives, or insinuating that his robe looks unkempt?

What if a lawyer insults the judge's former law partner, or his friend, while in the judge's presence?  Would if he called the judge's wife a name?  What about the wife's sister?  Cousin.  Second cousin.  14 degrees removed from the family tree.  'Judge, I read on ancestry.com that you are a descendant of brothel owners in medieval England.' Actionable? Doubtful.[59]

Plaintiff emphasizes that he is not an advocate for any of these actions.  Insulting a judge may have consequences for the outcome of the case.  But in terms of suffering the initial punishment of what can be the expensive loss of a judge's good graces, there are difficult constitutional problems with allowing insults directed to topics, objects or associations of the judge, ones inferred to say something pejorative about that judge, to double as a second punishment in the form of a separate ethics prosecution, given the core First Amendment right to criticize the government.

The bottom line is that when it comes to insults that are not direct factual accusations about the judge's moral character, the permutations are endless.  Because they are endless, they end up being an exercise in litigating "taste," which is not actionable.[60]

### 2. The Succubus Comment is Textbook "Rhetorical Hyperbole," Could Not Reasonably Be Construed as a Statement of Fact, and is Thus Clearly Protected by the First Amendment.

Even permitting the State Bar to rewrite the cited language to a direct accusation that Commissioner Luege is a succubus, where a succubus is defined to mean, according to the

---

[58]  *See Knievel v. ESPN* (9th Cir. 2004) 393 F.3d 1068, 1074.
[59]  *Standing Committee v. Yagman* (9th Cir. 1995) 55 F.3d 1430, 1434 (the *Yagman* court did not (bother to) address the insult of Judge Keller's wife as a "right wing fanatic").
[60]  *Hustler Magazine v. Falwell* (1988) 485 U.S. 46, 53-55.

PAVONE & FONNER, LLP

PAVONE & FONNER, LLP

1   complainant, "a demon assuming female form which has sexual intercourse with men in their

2   sleep,"[61] such a comment constitutes textbook "rhetorical hyperbole."[62]

3           One of the prerogatives of American citizenship is the right to criticize public figures:

4   "such criticism, inevitably, will not always be reasoned or moderate; public figures as well as

5   public officials will be subject to vehement, caustic, and sometimes unpleasantly sharp

6   attacks."[63]  Criticism is protected by the First Amendment if it cannot reasonably be interpreted

7   as stating "actual facts" about the target.'"[64]

8           Here, no one could seriously think that Commissioner Luege is actually a succubus.

9   No one could actually think any living person is a fictional creature from medieval folklore, that

10  has no bodily form, that assumes a voluptuous female human form at night, and in doing so,

11  sprouts wings and a tail, before seducing men.  It's not a factual accusation.

12          Apart from this problem, this is the entire sentence under review:

13              The ruling's succubustic adoption of the defense position, and resulting
                validation of the defendant's pseudohermaphroditic misconduct, prompt
14              one to entertain reverse peristalsis unto its four corners.

15          This verbiage could not more perfectly exemplify a "lusty and imaginative

16  expression"[65] protected by the First Amendment.[66]

17

18  _____

    [61]  *Martinez v. O'Hara* (2019) 32 Cal.App.5th 853, 855.
19
    [62]  *Standing Committee v. Yagman* (9th Cir. 1995) 55 F.3d 1430, 1438.
20
    [63]  *Hustler Magazine v. Falwell* (1988) 485 U.S. 46, 51, *citing Baumgartner v. United States*
21        (1944) 322 U.S. 665, 673-674 *and New York Times v. Sullivan*, 376 U.S. 254, 270 (1964).

    [64]  *Standing Committee v. Yagman* (9th Cir. 1995) 55 F.3d 1430, 1436-1437, *citing Hustler*
22        *Magazine v. Falwell* (1988) 485 U.S. 46, 50; *National Ass'n of Letter Carriers v. Austin*
23        (1974) 418 U.S. 264, 284; *Knievel v. ESPN* (9th Cir. 2004) 393 F.3d 1068, 1074 [calling
          Evil Knievel flanked by two women a "pimp" was not a literal assertion, but a jocular and
24        perhaps even complimentary one]; *Levinsky's v. Wal-Mart* (1st Cir. 1997) 127 F.3d 122, 128
          ["exaggeration and non-literal commentary have become an integral part of social
25        discourse"].

    [65]  *Standing Committee v. Yagman* (9th Cir. 1995) 55 F.3d 1430, 1438-1440, *citing Hustler*
26        *Magazine v. Falwell* (1988) 485 U.S. 46, 50; *National Ass'n of Letter Carriers v. Austin*
27        (1974) 418 U.S. 264, 286; *Nygard v. Uusi-Kerttula* (2008) 159 Cal.App.4th 1027, 1049
          [working conditions described as "slaved … without a break" among other things, reversed].
28  [66]  *See In re Snyder,* 472 U.S. 634, 637 (1985) [where a lawyer felt "appalled," "extremely
          disgusted" at a court's decision and verbalized his perception of the "extreme gymnastics

Even more closely – and factual – insults, such as *Austin* (calling someone a "traitor") or *Greenbelt* (accusing one of "blackmail") apparently would not be sufficiently factual to survive First Amendment scrutiny.[67]

Of course, then, the exponentially more esoteric allegation that a judge's *ruling* was succubistic somehow means that the judge is actually, factually, a gender-bending nocturnal demon spirit, one that assumes a winged female form at night to have sex with men, does not even register on the reality radar screen.

As such, Count 1's succubus charge is not actionable as a disciplinary matter since such textbook hyperbole is protected by the First Amendment.

### 3. The Succubus Comment Cannot Be Proven True or False.

Even if the Court permits the Bar to rewrite the language, and even if the term is not treated as hyperbole, which it clearly is, statements putatively disrespecting a judge cannot be punished unless they are capable of being proven true or false.[68]

So far as Plaintiff's life experience goes, if demons exist, they do not wear badges, sprout wings, display tails, or otherwise engage in detectable behavior by humans. Plaintiff assumes the OC trial judge would deny it. Accordingly, even if it were considered a factual allegation, which it is not, it could not be proven one way or the other. For this additional reason, Count 1 intrudes on protected First Amendment speech.

PAVONE & FONNER, LLP

---

even to receive the puny amounts which the federal courts authorize for [appointed] work" (remarks roughly comparable to the ones at bar), the ethics charge died on the vine.]

[67] *Standing Committee v. Yagman* (9th Cir. 1995) 55 F.3d 1430, 1438-1440, *citing National Ass'n of Letter Carriers v. Austin* (1974) 418 U.S. 264, 284 (use of word "traitor" could not be construed as representation of fact); *Greenbelt v. Bresler* (1970) 398 U.S. 6, 14 (use of word "blackmail" could not have been interpreted as charging plaintiff with commission of criminal offense)

[68] *Standing Committee v. Yagman* (9th Cir. 1995) 55 F.3d 1430, 1438, *citing Milkovich v. Lorain* (1990) 497 U.S. 1, 19, *Lewis v. Time* (9th Cir. 1983) 710 F.2d 549, 555, *and* Restatement (Second) of Torts (1977) § 566 (statement of opinion actionable "only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion")

### 4. The "Disgraceful Order" Aspect of Count 1 is not an Assertion about the Judge, and Even if it Were, It Would Clearly Constitute Protected First Amendment Opinion.

Count One also relates that, in the Notice of Appeal, prior to the succubus comment, Plaintiff called the Court's ruling a "disgraceful" order. Based on the same obstacles as above, the language does not directly refer to the judge or call her a name. If that characterization of the ruling is based on facts that are objectively true, it is absolutely protected.[69] But even if someone concluded that the opinion was not disgraceful, it's still simply that person's opinion. Opinions that cannot be settled are protected, per the authority cited above.

### 5. "Manifesting Gender Bias" is not Factual and Specific.

Another idea the Bar slips into Count 1 is that the succubus statement "manifests gender bias." This won't work either. The prohibition against "gender bias" was not codified as an ethical rule until a year and a half after the April 2017 statement was made, on November 1, 2018.[70] Aware of this, both the OC Court and the State Bar try to get in through the back door via 6068(b) what they cannot get in through the front door of Rule 8.4.1.

But the bigger problem is the word "manifesting." What does that mean? Suggesting? Implying? Insinuating? Something like that. However, 'suggesting something' is not nearly specific enough to constitute a factual crime or factual moral wrong. It is not a plausible violation of the statute to 'manifest' gender bias when the only impermissible assertions lie in specific factual accusations directly impugning the judge's moral character. If directly calling a judge "dishonest," a "traitor," or a "blackmailer," is not specific enough, then the significantly-more-vague accusation that an attorney's comment about her ruling *manifests* gender bias is also clearly not specific enough.

### D. First Amendment Limitations of Section 6068 Applied to Count 2.

Count Two alleges a violation of 6068(b) based on this language:

---

[69] *Standing Committee v. Yagman* (9th Cir. 1995) 55 F.3d 1430, 1438, *citing Garrison v. Louisiana* (1964) 379 U.S. 64, 74 *and Philadelphia Newspapers v. Hepps* (1986) 475 U.S. 767, 776-777.

[70] *Martinez v. O'Hara* (2019) 32 Cal.App.5th 853, 858 fn. 9, citing Cal. R. Prof. Con., Rule 8.4.1.

PAVONE & FONNER, LLP

> Plaintiff never actually received a copy of a signed judgment, though a stipulated judgment was prepared for the commission court's signature, as it apparently cynically attempted to suppress notice of the judgment in order to thwart review.

A jointly-prepared judgment was submitted on February 10, 2017.[71]   The OC trial court signed it on February 21, 2017.[72]  The signed judgment does not have a proof of service attached to it, nor do the remaining docket entries show that the signed judgment was served.[73]

The OC trial court did not serve the judgment.  As long as that is true, the following obstacles apply, each of which creates a fatal First Amendment bar:

(1) "apparently" attempted to suppress notice of the judgment is not a specific factual accusation.  The factual part – that the signed judgment was not served – is true and absolutely protected.

(2) the "apparently" part is an opinion based on facts that are disclosed – that the judgment was not received;

(3) It is true – the judgment wasn't served.  But even if counsel were proven wrong, counsel had a reasonable basis to believe that, as it was not received[74];

(4) "cynically attempted" to suppress notice is hyperbole or opinion, not factual, not provable and thus protected;

(5) Even if all of this language were completely factual, and objectively and provably untrue, attempting to "thwart review" is not a specific moral crime.  In fact, it is just the opposite – thwarting review is legally permissible.  By definition it cannot be morally wrong.

A California trial court is not obligated to serve a signed judgment. It is within its rights to cynically, purposefully, maliciously, or nefariously attempt to thwart review by not serving it, in order to see if the disaffected party forgets to appeal within six months and the appellate clock expires.[75]

For all of these reasons, Count 2 is not viable as a valid B&P 6068(b) charge.

---

[71]  BLP ¶ 12, Exhibit 10 (Martinez Docket 606).

[72]  BLP ¶ 12, Exhibit 10 (Martinez Docket 608).

[73]  BLP ¶ 13, Exhibit 11 (Judgment); BLP ¶ 12, Exhibit 10.

[74]  *Standing Committee v. Yagman* (9th Cir. 1995) 55 F.3d 1430, 1438 ["Lawyers may freely voice criticisms supported by a reasonable factual basis even if they turn out to be mistaken"]

[75]  Cal. Rules Ct., Rule 8.104(a).

PAVONE & FONNER, LLP

PAVONE & FONNER, LLP

### E.   First Amendment Limitations of Section 6068 Applied to Counts 3 and 4.

The remaining two charges relate to legal arguments in the *Martinez* opening brief and reply brief, respectively.[76]  Both counts consist essentially of a series of points about the accuracy of the trial court's ruling, while at times making the observation that since the rulings deviated (from Plaintiff's perception) so substantially from normative legal reasoning, the Court must have, or did, intentionally violate the law in order to rule against Martinez (for other, political, reasons detailed therein).  This dynamic was characterized by Plaintiff in a legalistic-sounding term as "judicial advocacy."[77]  *Yagman* called it being "overly result oriented."[78]

Robust debate regarding judicial performance is essential to a vital judiciary.[79]  If an attorney, after reasonable inquiry, has concerns about a judicial officer's fitness for service, he is permitted *and in fact encouraged* to express them openly.[80]  Protecting even harshly critical opinions of those at the center of disputes provides assurance that public debate will not suffer for lack of "imaginative expression."[81]

In these two counts, the State Bar is basically accusing Plaintiff of accusing Commissioner Luege of intellectual dishonesty.  *Yagman* found such criticism to be permissible, noting that it was a common reaction by frustrated lawyers.[82]  It has been described by other courts as "hidden bias" or acting on an "unstated premise."[83]   *Yagman* went on to conclude that since this characterization of a ruling, intellectual dishonesty, cannot be objectively proven true or false, such criticism constitutes opinion and is therefore not actionable.[84]

Notably, the Ninth Circuit interpreted Attorney Yagman's insult to be one about Judge Keller himself – that Keller was generally an intellectually dishonest person.  Here, the criticism

---

[76]   BLP ¶ 11, Exhibit 9 (NDC).
[77]   *See* BLP ¶ 7, Exhibit 5 [Opening Brief]; BLP ¶ 7, Exhibit 6 [Reply Brief].
[78]   *Standing Committee v. Yagman* (9th Cir. 1995) 55 F.3d 1430, 1441.
[79]   *Standing Committee v. Yagman* (C.D. Cal. 1994) 856 F.Supp. 1384, 1395.
[80]   *Standing Committee v. Yagman* (C.D. Cal. 1994) 856 F.Supp. 1384, 1395.
[81]   *Nygard v. Uusi-Kerttula* (2008) 159 Cal.App.4th 1027, 1049.
[82]   *Standing Committee v. Yagman* (9th Cir. 1995) 55 F.3d 1430, 1441 and fn. 19.
[83]   *Iowa v. Weaver* (2008) 750 N.W.2d 71, 90.
[84]   *Standing Committee v. Yagman* (9th Cir. 1995) 55 F.3d 1430, 1441 and fn. 19.

is only directed at one ruling, another "one off" from criticism found to be permissible.  The entire set of these legal arguments fails *Yagman* scrutiny.

Even if not, as the above authorities establish, calling a ruling intellectually dishonest is certainly an opinion: if it is right or at least not recklessly wrong, it is absolutely protected.[85]  If it is wrong, unlike Attorney Yagman's general criticism about Judge Keller, the facts supporting Plaintiff's assertion were set forth with appellate-level precision in the opening and reply briefs.[86]  This places them within the 'disclosed' category of protected First Amendment opinion and unenforceable for this further reason.[87]

**III.**

**B&P 6068(b) IS UNCONSTITUTIONAL.  ITS OPERATION IS UNENFORCEABLE IN LIGHT OF THE IRRECONCILABLE NATURE OF THE ALMOST INFINITE RANGE OF CRITICISMS THAT MAY CAUSE A JUDGE TO FEEL "DISRESPECTED," AS JUXTAPOSED AGAINST THE NUMEROUS PERMISSIBLE FORMS OF CRITICISM PERMITTED BY THE FIRST AMENDMENT.**

**A.  B&P 6068(b) is Overbroad**

In a constitutional challenge to the overbreadth of a law, the first question is whether the statute reaches a substantial amount of constitutionally protected conduct."[88]

Here, it is hard to imagine a term, "due respect," that is broader.  It sweeps within its confines virtually any and every statement any judge might be offended by, for any reason. Judges – that is people – may feel "disrespected" for an almost unlimited number of reasons:

> (1)   by comments they consider to be insulting, to their integrity,[89] to their
> independence (asserting bias),[90] to their gender,[91] to others,[92] to the judiciary in

---

[85]   *See* BLP ¶ 9, Exhibit 7 [petition for review summary].

[86]   *See* BLP ¶ 7, Exhibit 5 (Opening Brief); BLP ¶ 8, Exhibit 6 (Reply Brief)*.*

[87]   *See Standing Committee v. Yagman* (9th Cir. 1995) 55 F.3d 1430, 1438-1441.

[88]   *United States v. Wunsch* (9th Cir. 1996) 84 F.3d 1110, 1119.

[89]   *In re Buckley* (1973) 10 Cal.3d 237, 244 ["So merely stating I knew the law, merely emphasized the fact that I had no integrity"]; *In re Ciraolo* (1969) 70 Cal.2d 389, 394-395 (false accusation in affidavit); *Hume v. Superior Court* (1941) 17 Cal.2d 506, 513-514 (false charge of collusion of judge with Attorney General); *Blodgett v. Superior Court* (1930) 210 Cal. 1, 16 (false charge of corruption); *Lamberson v. Superior Court* (1907) 151 Cal. 458, 462-464 (affidavit to disqualify judge charging corrupt and improper motives); *Matter of Shay* (1911) 160 Cal. 399, 407-408 (false statements impugning reputation of judges).

[90]   *In re Buckley* (1973) 10 Cal. 3d 237, 244.

[91]   *Martinez v. O'Hara* (2019) 32 Cal.App.5th 853, 855.

general,[93] or for any other "impertinent, scandalous, insulting or contemptuous language" that might bother them[94];

(2)  ones that challenge their power, their prestige, their standing, or their authority;[95]

(3)  ones that send an impermissible message to the public, to the judiciary, to other lawyers[96], or to the exact people in the room;[97]

(4)  criticisms of things related to them, such as their rulings, families, or staff, such as characterizing a ruling as "illegal" or "unlawful,"[98] – which is by the way practically the job of an appellate lawyer – to criticisms that are viewed as an *ad hominem* attack on the judge herself.[99]

Within this gigantic umbrella of speech that the statute ropes in as potentially an ethics violation, almost the entire universe is in fact permissible in light of existing First Amendment principles cited above.

Addressing just category (1), direct insults about the judge, *Yagman* held that calling a judge "ignorant," "ill-tempered," a "buffoon," a "sub-standard human," a "right-wing fanatic," a "bully" and "one of the worst judges in the United States" was all permissible criticism.[100]

Yet, in direct contradiction to these principles, lawyers have been cited for calling rulings "illegal,"[101] for calling judges "petty,"[102] for suggesting a court engaged in "intellectual dishonesty,"[103] for suggesting a court sought to "thwart review,"[104] and for myriad other garden

---

92  *Snyder v. State Bar* (1976) 18 Cal.3d 286, 289 [calling opponents "flannel-mouth" and "The Mouche" and referred to opposing counsel as "alleged attorneys."]; *In re Koven* (2005) 134 Cal.App.4th 262, 268.

93  *In re Friday* (1934) 138 Cal.App. 660, 663 (attorney accused judge of meeting with opposition counsel, whereas other attorney only in chambers to pick up a piece of paper).

94  *Hume v. Superior Court* (1941) 17 Cal.2d 506, 513-514.

95  *Moody v. Staar* (2011) 195 Cal.App.4th 1043, 1048; *Martinez v. California* (2015) 238 Cal.App.4th 559, 568-569; *Hogan v. State Bar* (1951) 36 Cal. 2d 807, 809 [lawyer insulted judge by calling him "petty"].

96  *Snyder v. State Bar* (1976) 18 Cal.3d 286, 289 [calling opponents "flannel-mouth" and "The Mouche" and referred to opposing counsel as "alleged attorneys.")

97  *See Berner v. Delahanty* (1st Cir. 1997) 129 F.3d 20, 27 [prohibiting political buttons]

98  *Ramirez v. State Bar* (1980) 28 Cal.3d 402, 411.

99  *See Martinez v. O'Hara* (2019) 32 Cal.5th 853, 855.

100  *Standing Committee v. Yagman* (9th Cir. 1995) 55 F.3d 1430, 1440.

101  *Ramirez v. State Bar* (1980) 28 Cal.3d 402, 411.

102  *Hogan v. State Bar* (1951) 36 Cal. 2d 807, 809.

103  *In re Koven* (2005) 134 Cal.App.4th 262, 268.

variety insults that utterly fail constitutional barriers erected by *Bridges*, *Gentile*, *Hustler* and *Yagman*.

Furthermore, the cases that cite lawyers without regard for governing First Amendment principles seem generally unconcerned with another major hurdle: truth.  At least some of these cases involve an insult toward a judge that is true.

All judges are human and so by definition some *are* corrupt,[105] some *are* petty,[106] and some judges *are* overly result oriented.[107]  Yet the statute and the California case law analyzing attorney insults makes almost no room for this.  The California case law pretty much treats the truth or the falsity of the attorney's claim as if it is irrelevant.   But it's not irrelevant – *truth is an absolute defense*.[108]

This glaring omission in the statute, and crucial feature largely absent from the California case law, result in section 6068(b) criminalizing a grand volume of permissible speech, in a seriously overbroad fashion relative to normative constitutional limitations.

Thus, without even reaching categories (2)-(6), which are gradually even more controversial in terms of being viable 6068(b) violations, an analysis of just prong (1) reveals that 6068(b) encompasses a huge – and certainly substantial – amount of constitutionally protected speech.

Consequently, such a restriction is unconstitutional unless it is "fairly subject to a limiting construction."[109]  However, Plaintiff is unaware of any limitations that California has read into 6068(b).  As far as the State Bar is concerned, *Ramirez*, the case faulting a lawyer for

---

[104]  *Martinez v. O'Hara* (2019) 32 Cal.App.5th 853, 855.

[105]  *See Adams v. Comm'n on Judicial Performance* (1994) 8 Cal.4th 630, 641.

[106]  *See, e.g., Martinez v. O'Hara* (2019) Case No. G054840, Slp. Opn, p. 10 [denying Martinez's fee application because the case was not filed in limited civil, even though the complaint pled for injunctive relief and *was required* to be filed in unlimited].

[107]  *See Standing Committee v. Yagman* (9th Cir. 1995) 55 F.3d 1430, 1441 and fn. 19.

[108]  *Standing Committee v. Yagman* (9th Cir. 1995) 55 F.3d 1430, 1438, *citing Garrison v. Louisiana* (1964) 379 U.S. 64, 74 *and Philadelphia Newspapers v. Hepps* (1986) 475 U.S. 767, 776-777.

[109]  *Standing Committee v. Yagman* (9th Cir. 1995) 55 F.3d 1430, 1437, *citing Airport Comm'rs v. Jews for Jesus,* 482 U.S. 569, 577, 96 L.Ed.2d 500, 107 S.Ct. 2568 (1987).

PAVONE & FONNER, LLP

PAVONE & FONNER, LLP

calling a ruling "illegal" and "unlawful," is good law.[110]   The State Bar appears to also believe that *Hogan* is good law, where the judge was called "petty."[111]   The *Martinez* court seems to think that almost any "offensive" or "contemptible" language can constitute a 6068(b) violation – it referred the arguments in two entire legal briefs, some <u>*33 statements*</u> charged, as putatively constituting 6068(b) violations.[112]   This overreach underscores the need to invalidate the statute, as this Court did with respect to 6068(h).

  *Yagman* treats virtually all such vitriol as encompassed within the First Amendment.[113] Accordingly, although there is a considerable body of California case law addressed to section 6068, none of it really limits the statute's reach.[114]

  In 1996, the Ninth Circuit characterized the California case law about subdivision <u>**(h)**</u>, pertaining to "offensive personality," thusly: 6068(h) "fails to reveal a single controlling decision – much less a clear line of authority – that either specifically discusses the scope of section 6068(f) or explicitly limits its applicability to, *e.g.*, courtroom interactions."[115]

  A perusal of the state case law reveals that 6068(b) has just as many applications, is just as broad, is just as vague, sweeps in just as much permissible speech, and is supported by a body of California case law that just as equally as 6068(h) interposes no limits on its reach.   Mild criticisms are violations.[116]   Opinions are violations.[117]   Criticism apart from the judge's moral character are considered violations.[118]   Criticism that is part of an appellate attorney's job can result in charges.[119]

---

[110]   *Ramirez v. State Bar* (1980) 28 Cal.3d 402, 411.

[111]   *Hogan v. State Bar* (1951) 36 Cal.2d 807, 809.

[112]   *See Martinez v. O'Hara* (2019) 32 Cal.App.5th 853, 855; *In re White* (2004) 121 Cal.App.4th 1453, 1456; *see* BLP, ¶ 11, Exhibit 9 (NDC).

[113]   *Standing Committee v. Yagman* (9th Cir. 1995) 55 F.3d 1430, 1440.

[114]   *See, e.g., Martinez v. O'Hara* (2019) 32 Cal.App.5th 853, 855.

[115]   *United States v. Wunsch* (9th Cir. 1996) 84 F.3d 1110, 1118.

[116]   *Ramirez v. State Bar* (1980) 28 Cal.3d 402, 411 [characterizing a trial ruling as "illegal" or "unlawful" appears in probably half of the nation's appellate briefs].

[117]   *Hogan v. State Bar* (1951) 36 Cal.2d 807, 809.

[118]   *See* BLP ¶ 11, Exhibit 9 (NDC, Count 2).

[119]   *See Ramirez v. State Bar* (1980) 28 Cal.3d 402, 411.

In fact, in Plaintiff's research, counsel does not recall a single case in which the state courts did _not_ find a violation.  Yet, the federal constitutional rules under *Bridges*, *Gentile*, *Hustler* and *Yagman* repudiate virtually the entire body of state case law, leaving at most a single channel of enforceable 6068(b) speech misconduct: criticism asserting specific, factual, objectively provable, corruption-related crime.[120]

Because of the vast net of permissible speech that the broad 6068(b) terminology linguistically encompasses, and an extensive body of case law that nevertheless fails to limit its reach, the statute is unquestionably unconstitutionally overbroad.

### B.  B&P 6068(b) is Also Vague.

A related problem with the constitutionality of 6068(b) is that it is vague.  The rule fails to provide "fair notice" of what is prohibited.[121]  Lawyers must guess at its contours.[122]  "Due respect" is an obligation of degree.[123]  Concerns about litigating "taste" abound.[124]  A lawyer has no fixed principle for objectively determining when a criticism passes from permissible to impermissible.[125]  There is no settled usage of the term because California state law and federal case law contradict each other.[126]  A comment that ignites one judge into Biblical abomination mode[127] could be another judge's comedic kerfuffle.[128]

---

[120]  *Standing Committee v. Yagman* (9th Cir. 1995) 55 F.3d 1430, 1440, *citing Cianci v. New Times* (2d Cir. 1980) 639 F.2d 54, 64.

[121]  *Gentile v. State Bar* (1991) 501 U.S. 1030, 1048, *citing Grayned v. Rockford* (1972) 408 U.S. 104, 112.

[122]  *Gentile v. State Bar* (1991) 501 U.S. 1030, 1048.

[123]  *Gentile v. State Bar* (1991) 501 U.S. 1030, 1048.

[124]  *Hustler Magazine v. Falwell* (1988) 485 U.S. 46, 53-55.

[125]  *Gentile v. State Bar* (1991) 501 U.S. 1030, 1048-1049, *citing Grayned v. City of Rockford* (1972) 408 U.S. 104, 112.

[126]  Compare *Standing Committee v. Yagman* (9th Cir. 1995) 55 F.3d 1430, 1437-1441 *to Ramirez v. State Bar* (1980) 28 Cal.3d 402, 411 *and Hogan v. State Bar* (1951) 36 Cal.2d 807, 809.

[127]  *Martinez v. O'Hara* (2019) 32 Cal.App.5th 853, 855 [treating succubus reference is a literal demonic incantation].

[128]  "*Succubus (Dungeons and Dragons 5th Edition)*," Succubus.net, Website: http://www.succubus.net (September 16, 2020) [relating the succubus' role as a character to be confronted in the (teenage) fantasy role-playing game, "Dungeons & Dragons"]; *See, e.g.*, Marshall, Jack, "*Ethics Quote Of The Week: California Attorney Benjamin Pavone*," Ethics

PAVONE & FONNER, LLP

Established principles of federal constitutional law, such as the latitude to engage in rhetorical hyperbole,[129] are rarely recognized and almost never applied on the state side.[130]

In this case, instead of undertaking a serious First Amendment analysis based on the right of lawyers to dream up "lusty and imaginative" criticisms, the state judges in this case decided to nationally lambast undersigned counsel as a misogynist, while cynically burying in a footnote the legal reality that the gender rule they were enforcing post-dated the offense in question.[131]

In summary, the failure of the California case law, including in this case, to produce 6068(b) opinions that respect First Amendment limitations leave it open to be enforced in a vague, constitutionally unacceptable manner.  It should be invalidated as a result.

## CONCLUSION

The truly important principle in a case like this was stated 80 years ago by revered US Supreme Court Justice Hugo Black:

> The assumption that respect for the judiciary can be won by shielding judges from published criticism wrongly appraises the character of American public opinion. For it is a prized American privilege to speak one's mind, although not always with perfect good taste, on all public institutions. And an enforced silence, however limited, solely in the name of preserving the dignity of the bench, would probably engender resentment, suspicion, and contempt much more than it would enhance respect.[132]

---

Alarms, Website: https://ethicsalarms.com (March 5, 2019) [chuckling about the colorful language].

[129] *Milkovich v. Lorain* (1990) 497 U.S. 1, 17; *Letter Carriers v. Austin* (1974) 418 U.S. 264, 284-286; *Greenbelt. v. Bresler,* 398 U.S. 6, 14 ("even the most careless reader must have perceived that the word was no more than rhetorical hyperbole, a vigorous epithet used by those who considered Bresler's negotiating position extremely unreasonable")

[130] *See Martinez v. O'Hara* (2019) 32 Cal.App.5th 853, 855 [no First Amendment analysis for clearly hyperbolic comment].

[131] *Martinez v. O'Hara* (2019) 32 Cal.App.5th 853, 855, fn. 9.

[132] *Bridges v. California* (1941) 314 U.S. 252, 270-271.

PAVONE & FONNER, LLP

Amen.  A majestic judiciary does not dignify insults directed to it.  The pillars, the courtrooms, the bench, the robes – the judiciary sits in a carefully constructed, elevated position over all others, including in some instances, the other branches.[133]

The judiciary should not respond to critics.  It doesn't need to.  It holds the power of decision.  While lawyers may bitch and moan, *judges decide*.  The judiciary should expect all manner of "sour grapes" criticism to arise from frustrated lawyers, litigants, media, political opponents, and ideological adversaries.

Judges that ignore criticism will be seen as the ones most respected.  Judges that are offended by every unkind word uttered about them, ones who sic the Bar on lawyers to charge them with medieval blasphemy, in a business whose business is controversy, won't be confused for constitutional scholars.

Given a legal world constructed out of concrete pillars and marble hallways, emotional fragility is inconsistent with the judiciary's public messaging.  The strongest, most consistent and most fortifying position for the judiciary to take is that it is impervious to criticism.

That's what Justice Black would say.

And he is respected – and remembered – for welding this First Amendment postulate into the foundation of American jurisprudence.[134]


Respectfully:

Date: September 17, 2020

PAVONE & FONNER, LLP

Benjamin Pavone, Esq.

Attorneys for Plaintiff

---

[133] *Marbury v. Madison*, 5 U.S. 137, 173-174 (1803).
[134] *Standing Committee v. Yagman* (9th Cir. 1995) 55 F.3d 1430, 1445.